GAUDIN, Judge.
Joseph Cross was convicted of armed robbery of a Kentucky Fried Chicken outlet and sentenced to 15 years at hard labor without benefit of parole, probation or suspension of sentence.
He assigns four district court errors, contending that the trial judge was wrong in:
(1) Not granting a motion to quash the bill of information,
(2) Shifting the burden of proof to him,
(3) Imposing an excessive sentence, and
(4) Not ordering a presentence investigation and not complying with LSA-C.Cr.P. art. 894.1.
On the night of December 13, 1983, a man later identified as appellant entered a fried chicken store on the Westbank Expressway in Jefferson Parish. Brandishing a pistol, he threatened two female employees, took $180.00 and fled. Both employees picked Cross from a photographic lineup the following day and appellant was arrested. He was tried and convicted on October 23, 1984.
ASSIGNMENT NO. 1
In this assignment of error, Cross argues that his motion to quash the bill of information, based on the State’s failure to give him a speedy trial, should have been granted. Originally, appellant was charged with theft, but on March 13, 1984, this charge was dismissed. On the next day (March 14), a new bill of information was filed *66 charging Cross with armed robbery. He was arraigned on April 2, 1984, and on April 17th he filed a motion to quash, which was denied on May 15th.
Subsequently, the trial was scheduled for June 19th, September 17th and October 22nd before being held on October 23rd. The State requested a continuance on June 19th, the defense on September 17th and a joint request was submitted on October 22nd.
The institution of prosecution was well within the six-year deadline specified in LSA-C.Cr.P. art. 572, and the March 14, 1984 bill of information was filed within the 150-day period set out in LSA-C.Cr.P. art. 701B(2). As there was no violation of either of these articles and because Cross has not shown any meaningful prejudice, this assignment of error is without substance.
The only alleged prejudice is that Cross’ several alibi witnesses may not have remembered events as clearly as they would have had the trial been held earlier than it was. However, we have carefully scrutinized the testimony of the alibi witnesses, and their testimony was straightforward and precise. Unfortunately for Cross, the trial judge chose not to believe them.
Appellant has not suggested that the prosecution was in bad faith and we note that Cross was free on bail and not incarcerated awaiting trial. The overall period of time from arrest to trial was just over 10 months, during which time Cross filed, in addition to several requests for continuances, a motion to quash, which, according to State v. Booker, 444 So.2d 238 (La. App. 1st Cir.1983), and LSA-C.Cr.P. art. 580, suspends time limitations.
The trial judge did not find that Cross was unconstitutionally denied a speedy trial, nor do we.
ASSIGNMENT NO. 2
Following a bench trial, the judge stated:
“The eye witness identification by itself, even though there were two positive people, might not be enough. The gun by itself might not be enough. The jacket might not be enough. But you put all these together and compare that to some of the rocky testimony of the alibi witnesses, the court is led to the conclusion the defendant committed the crime.
This wording, Cross argues, makes it unclear whether or not the trial judge shifted the burden of proof to him and required him to satisfactorily establish his alibi defense.
The State, on the other hand, contends that the trial judge’s remarks indicate only that he was mindful of the alibi witnesses although convinced otherwise that the prosecution had proven, by its witnesses and evidence, all of the necessary elements of the crime and guilt beyond a reasonable doubt.
We do not know, of course, what the trial judge meant by the “rocky” testimony of the alibi witnesses. There were three alibi witnesses, Merrill Brouillette, Brenda Lee Green and Cassell Johnes, and each one’s testimony was supportive of the others, not contradictory. Each alibi witness distinctly remembered that Cross was at the home of Miss Green, his girlfriend, between 7 and 8 p.m. on the evening of December 13, 1983. The fried chicken store was robbed between 7 and 7:45 p.m.
Brouillette said:
“The only thing I can tell you is that Joe, he was working at the Naval Base, he was in the service, and I was putting down floors and he told me he’d get me a part time job over there so he told me to come with him and fill out an application. I went there and I filled out an application. I stayed there and I filled out an application. He showed me around. He showed me how to operate the dishwasher and everything. By the time we got off he told me he had to go pick up his girl at 6:30. We got to the hospital about 6:30, 6:35, or somewhere like that. I had to wait a couple of minutes because he went in the hospital and got her. I waited in the car, they came out, we brought her to her house. We got to her *67 house about seven, five after seven. So I waited about ten or fifteen minutes and Joe was inside. He told me that they would be watching TV, so he told me to go down about two blocks down where they’d have a little game room, because I don’t like being inside his girlfriend’s house when he’s there.
“Okay. They told me that they would be watching television so I’d told them I would go down — they got a game room about two blocks down. I went down to the game room. I got there about 7:30 and I stayed there to about — let’s see ... when I got back to Brenda’s house it was about 8:30. He said he would take me home. That’s it. He brought me home later about 9:00. We left about 8:35 and it’s about a twenty to twenty-five minute drive to my house. That’s it. That’s the last I seen of him.”
Miss Green clearly recalled being with the appellant on the night of December 13th watching a movie on television, as Brouillette had said. Miss Green even remembered the name of the movie, “Porky.”
Miss Johnes said that Cross and Miss Green did in fact watch television from about 6:45 p.m. until he left the house approximately an hour and a half later.
The testimony of the alibi witnesses, as it appears in the record, is direct and unwavering. Perhaps it was something in the mannerisms of the witnesses that the trial judge found “rocky” but more likely the trial judge used this adjective because the testimony of the alibi witnesses, taken together, was shaky in the sense that it was diametrically opposed to the testimony of the prosecution’s more credible witnesses. In any event, there is no doubt that the alibi defense was in sharp focus but the trial judge believed the State’s witnesses and not the defense witnesses, which included the three alibi witnesses and Cross himself.
The prosecution also produced (1) a green army jacket legally seized from Cross’ residence and (2) a pistol brought into a police station by appellant’s mother. Both items were properly identified by one of the store employees who also positively identified Cross as the person who committed the armed robbery. . This employee described Cross and his green army jacket in accurate detail and she was asked if she was certain that Cross was the “... man that robbed her.” She replied: “Yes.”
From the heretofore quoted remarks of the trial judge, and from our careful review of the record, our considered opinion that the trial judge took into account all of the testimony and evidence and concluded that the elements of armed robbery had been proven beyond a reasonable doubt. There was no shifting of the burden of proof, as suggested by appellant. We also find that the standards of review annunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), were not offended, although this possibility was not called to our attention by any assignment of error.
ASSIGNMENTS 3 and 4
These specifications of error deal with the sentencing phase of Cross’ trial. He believes a 15-year sentence for a second offender was excessive and that he was sent to jail without a presentence investigation and without good cause shown. Cross contends that he should have received a suspended sentence with probation.
At the sentencing hearing, the trial judge said:
“The Court found the defendant guilty of armed robbery and the defendant is here for sentencing today. The fact that this is an armed robbery, a pistol being used, and some threatening of life, harm to the victims, it calls for a serious purview of the Court of what the sentence should be. Since the defendant has not had any serious problem in the past, I’m taking that into consideration. I’m not going to give him my usual sentence for armed robberies of this type.
“I have therefore sentenced the defendant to fifteen years in the custody of the Department of Corrections, with credit for time served awaiting trial. The sen *68 tence is without benefit of probation, parole or suspension of sentence.”
This does not constitute, needless to say, an articulate compliance with LSA-C.Cr.P. art. 894.1. However, some things are obvious.
First of all, an armed robbery conviction does not permit a suspended jail sentence. The statute’s very language is prohibitive:
“Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than 99 years, without benefit of parole, probation or suspension of sentence.”
(Underlining provided.)
Also, a presentence investigation is not available to a defendant as a matter of right. It is a sentencing tool that the trial judge may decide to use. See State v. Bell, 377 So.2d 275 (La.1979).
In passing sentence, a trial judge is vested with wide discretion. His sentence should not be disturbed on appeal unless there was a manifest abuse of this discretion or unless the sentence is grossly out of proportion to the offense. See State v. Humphrey, 445 So.2d 1155 (La.1984); and State v. Davenport, 445 So.2d 1190 (La. 1984), and cases cited therein.
Here, Cross, an admitted second offender, was convicted of committing a serious crime while armed with a gun. He could have received a statutorily-sanctioned 99-year prison term. We are unwilling to say that the facts and circumstances of this case indicate that the trial judge abused his wide discretion and that Cross, on remand, should be resentenced.
For these reasons, we affirm Cross’ conviction and sentence.
AFFIRMED